**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

|  |  |  |
|---|---|---|
| INTERNATIONAL BUSINESS | : | |
| MACHINES CORP., | : | |
|     Plaintiff, | : | |
|  | : | |
|     v. | : | No. 2:04-CV-260 |
|  | : | |
| TOKYO ELECTRON AMERICA, | : | |
| INC., and SEMIFAB, INC., | : | |
|     Defendants. | : | |
|  | : | |

**OPINION AND ORDER**

This is a subrogation action arising out of a property loss suffered by Plaintiff International Business Machines Corp. ("IBM").  Before the Court are motions by Defendants Tokyo Electron America, Inc. ("TEA"), and Semifab, Inc., for dismissal of the action based on improper conduct by Plaintiff's counsel, as well as a motion by TEA requesting reimbursement of its attorneys' fees and other expenses.  Also pending are motions by TEA and Semifab to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(6) and a motion by Semifab for summary judgment.

For the reasons stated below, TEA and Semifab's motions for the sanction of dismissal are GRANTED.  IBM's motions for extensions of time to file an opposition to TEA's motion to dismiss are DENIED.  TEA and Semifab's motions to dismiss are GRANTED.  Semifab's motion for summary judgment is GRANTED.  Additionally, counsel for IBM are ORDERED to reimburse Defendants TEA and Semifab for certain attorneys' fees and other expenses.

## BACKGROUND

Except where otherwise noted, the following facts are taken from the allegations in IBM's complaint and from the undisputed submissions of the parties.  The events giving rise to this case began when IBM purchased a Semifab brand environmental conditioning unit ("ECU") and installed it at its manufacturing facility in Essex Junction, Vermont.  Subsequently, contaminated water or condensate leaked from the ECU.  On or about October 4, 2001, it was discovered that the leak had damaged a Nikon Lithograph Wafer Tool owned by IBM, causing over $4,000,000 of damage.  IBM's insurance carrier[1] subsequently compensated IBM for some or all of the loss that it had suffered.

On October 4, 2004, the instant action was filed as a subrogation action, brought by IBM's insurer in IBM's name.[2]  The complaint alleges that the ECU was manufactured by TEA and sold or distributed by Semifab, and that TEA and Semifab are liable to IBM for breach of warranty, negligence, and breach of contract.

Throughout the course of the litigation, IBM has been

_____

[1] In its submissions, IBM has not identified its insurance carrier.  Semifab identifies the insurer as AIG.  See Defendant Semifab, Inc.'s Supplemental Memorandum of Law in Support of its Motion for Sanctions at 1 (Paper 38) (hereinafter Semifab Supp. Mem.).  IBM has neither confirmed nor denied this.

[2] Because the complaint was brought in IBM's name, the Court will refer to the plaintiff as "IBM" throughout this opinion, even though the subrogated insurance carrier is the real party in interest.

represented by Pietro J. Lynn and Barbara R. Blackman of the
Burlington, Vermont law firm of Lynn, Thomas & Mihalich, P.C.  As
indicated by his signature on the complaint and on other
documents filed with the Court, Mr. Lynn appears to be serving as
lead counsel.

## A. **Defendants' dispositive motions**

On March 8, 2005, TEA filed a motion to dismiss IBM's action
pursuant to Fed. RR. Civ. P. 12(b)(6) and 12(c).  TEA argued that
it should not have been named as a defendant because it had
neither manufactured nor sold the ECU.  Instead, it contended,
the ECU had been manufactured by Semifab and sold to IBM by TEA's
parent company, Tokyo Electron Limited ("TEL").  TEA also argued
that the action had been brought in the wrong jurisdiction, since
IBM and TEL were parties to an agreement containing a forum
selection clause that required disputes to be brought in a
competent jurisdiction in the state of New York.

IBM did not file any response to TEA's motion to dismiss
within the 10 days prescribed by Local Rule 7.1(a)(3).  On April
12, 2005, it filed a motion seeking a 30-day extension of the
time to file an opposition.  It argued that because TEA had based
its motion on matters outside of the pleadings, the motion should
be treated as one for summary judgment, for which an opposition
must be filed within 30 days.  It also cited "unrelated
commitments of plaintiff's counsel" as a justification for the

3

extension.  On May 6, 2005, IBM filed a second motion seeking an additional 30 days to file its response.  It stated that due to the magnitude of the claim and the complexity of the damaged equipment, its counsel were having difficulty "marshaling the evidence necessary to present to the court with its opposition." Second Motion to Oppose TEA's Motion to Dismiss at 1 (Paper 25). The Court did not rule on either of IBM's motions for extensions, and IBM has not, to this date, submitted an opposition to TEA's motion.

On May 3, 2005, Semifab filed a motion for summary judgment on all claims and a motion to dismiss the negligence claim against it.  In the summary judgment motion, Semifab argued that IBM's claims were barred by Vermont's three-year statute of limitations for actions for damage to personal property.  It contended that the property damage that was the subject of the complaint had occurred on or before October 3, 2001, which was more than three years before the filing of the complaint.  In the motion to dismiss, Semifab argued that because IBM's claim was based on an alleged breach of contract, Vermont law precluded IBM from seeking recovery in tort.  IBM has not filed an opposition to Semifab's summary judgment motion or to its motion to dismiss, nor has it sought an extension of time to file an opposition.

B. **Discovery**

The Court issued a Stipulated Discovery Schedule Order on

4

February 7, 2005.  In that order, the Court directed that initial disclosures be served by February 18, 2005; that interrogatories and requests for production be served by July 1, 2005; that depositions of non-expert witnesses be submitted by June 15, 2005; that IBM submit expert witness reports by March 15, 2005; and that depositions of IBM's expert witnesses be completed by April 15, 2005.  It also ordered that an Early Neutral Evaluation ("ENE") session be conducted on May 11, 2005, at 10:00 am.

Defendants state that IBM has failed to comply with its discovery obligations at all, much less by the deadlines in the Court's Discovery and Scheduling Order.  In particular, they state that IBM did not make any initial disclosures, that it did not respond to Semifab's interrogatories, that it did not respond to Semifab's requests to inspect the ECU, that it did not make any expert disclosures, and that it did not submit an ENE statement.  Semifab also states that it made numerous good faith efforts to encourage IBM to participate in the discovery process, but that IBM failed to respond to its communications.  Following the failure of these efforts, Semifab filed a motion to compel discovery on March 16, 2005.

Although IBM has not specifically responded to these assertions, it has presented no evidence to the contrary, and it has conceded that "[t]here is no doubt that IBM has not complied with its discovery obligation under the Federal Rules of Civil Procedure."  Opp. to Motions for Sanctions at 1 (Paper 35).  IBM

has not filed any objections to Defendants' discovery requests. On May 6, 2005, it filed a motion to amend the discovery schedule, stating that it was having "difficulty marshaling the evidence necessary to comply with the discovery demands set forth in the current Discovery/Schedule Order."  Motion to Amend Stipulated Discovery Schedule/Order at 1 (Paper 26).

## C. **The ENE session and status conference**

As noted above, the Court's February 7, 2005 order directed the parties to attend an ENE session on May 11, 2005, at 10:00 am.  In IBM's May 6, 2005 motion to amend the discovery schedule, it acknowledged that "[t]he ENE is scheduled for May 11, 2005" and proposed that the ENE session be rescheduled.  On May 9, 2005, Defendants filed a joint motion to stay the ENE session until a later date.  The Court did not rule on either of these motions, but instead directed Elizabeth Evelti, Judge Sessions' judicial assistant, to inform the parties that a status conference would be held on May 11 at 3:30 pm, following the ENE session.  On May 10, Ms. Evelti contacted counsel for all three parties and informed them of that fact.

On the afternoon of May 10, 2005, counsel for IBM sent a facsimile transmission to Defendants' attorneys, Robert Cain and Kurt Gerstner, as well as the ENE evaluator, John Monahan, indicating that IBM and its counsel would not attend the ENE session.  The message stated:

> This facsimile follows the messages that I just left on everyone's voice mail.
>
> I am in receipt of Bob Cain's fax and Kurt Gerstner's fax, both of which contemplate that the ENE will go forward tomorrow morning.  To reiterate - and I thought this would have been painfully clear from my motion last week - my client is not prepared to go forward with tomorrow's ENE. I believe Bob Cain agreed to this in one of the many oppositions that filed with the court.  Whatever our differences, I think that we can all agree that the ENE would be a waste of time at this juncture.  Accordingly, I urge you not to appear at John Monahan's office tomorrow morning with your respective clients.  My client and I will not be there.
>
> Kurt, I understand that you may be traveling to Vermont anyway for tomorrow's hearing and I look forward to seeing you there.

Facsimile of Barbara Blackman, Ex. B to Semifab Supp. Mem.

The following morning, May 11, 2005, the ENE session took place at the office of the evaluator, John Monahan.  The session was attended by Mr. Monahan, counsel for TEA and Semifab, and representatives from TEA and Semifab.  Both of Defendants' representatives had traveled from California to attend.  Neither counsel for IBM nor any representative of IBM was in attendance. Because of IBM's absence, the session was adjourned immediately.

That same day, shortly after the ENE session, Semifab filed a motion for sanctions against IBM.  Semifab sought dismissal of the action based on IBM's failure to attend the court-ordered ENE session as well as its pattern of noncompliance with its discovery obligations.

The status conference called by the Court took place later that day, at 3:30 pm on May 11.  All three parties were

7

represented by counsel; however, Mr. Lynn, IBM's lead attorney, failed to appear at the hearing, and Ms. Blackman appeared in his stead.  She stated that Mr. Lynn was not in attendance because he was attending a previously scheduled deposition relating to another matter.  Tra. of Status Conference at 6, Ex. 2 to Semifab Supp. Mem.

At the conference, the Court expressed its deep concern over the fact that IBM had failed to attend the ENE session, and suggested that "combined with the concerns that have been raised in regards to the discovery, it's as if this litigation has been ignored."  Id. at 5.  Counsel for IBM, Ms. Blackman, conceded that this was a "fair point" and that the litigation had been "off track."  Id. at 5, 7.  She also acknowledged that neither IBM nor its counsel had been present at the ENE session and stated that she had been under the impression that the session was not going to go forward.  Id. at 3-4.

At the hearing, Ms. Blackman stated that her firm had been retained by New York counsel and that her firm had "never had any direct contact with the subrogated carrier."  Id. at 7.  She indicated that in recent weeks, arrangements had been made for direct communication between her firm and the carrier, as well as the staff at the IBM facility in Essex Junction.  Id. at 8.  She stated that progress in the case had been impeded by various issues.  In particular, her firm had encountered difficulty in identifying IBM employees who were knowledgeable about the ECU,

and it had become aware of a "choice of law issue," which "meant that jurisdiction ought to be in New York and not here." Id. at 7-8.  These issues, Ms. Blackman stated, had "over[taken] our primary objective in this case which was to prosecute the case and proceed to produce documents." Id. at 8.

At the close of the hearing, the Court expressed to the parties that it was seriously considering dismissal based on the conduct of plaintiff's counsel.  It acknowledged its receipt of Semifab's motion for sanctions and indicated that it would accept further submissions from all of the parties on that issue.

On June 2, 2005, IBM filed an opposition to Semifab's motion for sanctions.  It conceded that it had not complied with its discovery obligations, but suggested that "[c]ounsel has not disregarded the Rules, rather there have been logistical difficulties which have slowed the case." Opp. to Motions for Sanctions at 1-2.  IBM also stated that "IBM was not aware at any time that the Court had instructed it to go forward with the ENE," id. at 2, and that its failure to appear had not been willful.

On June 9, 2005, Semifab filed a supplemental memorandum of law in support of its motion for sanctions in which it set forth additional support for its arguments.  On June 13, 2005, TEA filed its own motion for sanctions.  TEA sought dismissal of the action and an order compelling IBM to pay its attorneys' fees and costs.  TEA cited IBM's failure to attend the ENE session, its

disregard of its discovery obligations, and its failure to respond to TEA's motion to dismiss.

## DISCUSSION

### A. The sanction of dismissal under the Federal Rules

The Federal Rules of Civil Procedure empower the Court to impose sanctions on a party for violations of the Rules and of the Court's orders.  Fed. R. Civ. P. 37(b)(2) authorizes sanctions for failing to obey discovery orders:

> If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

The rule then sets forth a nonexclusive list of potential sanctions, the most severe of which include dismissal of the action and entry of default judgment.  See Fed. R. Civ. P. 37(b)(2)(C).

Fed. R. Civ. P. 16(f) authorizes a similar range of sanctions for a party's failure to obey scheduling or pretrial orders or to attend a scheduling or pretrial conference:

> If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D).

Because Rule 16(f) incorporates portions of Rule 37(b)(2), courts generally apply the same standards when determining the

10

appropriateness of sanctions under either rule.  <u>See, e.g.</u>,

<u>Salahuddin v. Harris</u>, 782 F.2d 1127, 1133 (2d Cir. 1986); <u>see</u>

<u>also</u> Fed. R. Civ. P. 16 advisory committee's note to 1983

amendments (indicating that application of Rule 16(f) is

facilitated "since courts and lawyers already are familiar with

the Rule 37 standards").

    In <u>Daval Steel Products v. M/V Fakredine</u>, 951 F.2d 1357,

1365 (2d Cir. 1991), the Second Circuit discussed the importance

of compliance with the Federal Rules' discovery provisions:

> The discovery provisions of the Federal Rules of Civil
> Procedure are designed to achieve disclosure of all the
> evidence relevant to the merits of a controversy.  It is
> intended that this disclosure of evidence proceed at the
> initiative of the parties, free from the time-consuming
> and costly process of court intervention.  When a party
> seeks to frustrate this design by disobeying discovery
> orders, thereby preventing disclosure of facts essential
> to an adjudication on the merits, severe sanctions are
> appropriate.

The sanctions provisions of the Rules, the Second Circuit has

explained, serve three purposes: to ensure that a party does not

profit from his or her own failure to comply; to ensure

compliance with the order at hand, i.e., to provide specific

deterrence; and to provide general deterrence, provided that the

party against whom the sanctions are levied is in some sense at

fault.  <u>Cine Forty-Second Street Theatre v. Allied Artists</u>, 602

F.2d 1062, 1066 (2d Cir. 1979).

    In furtherance of these principles, district courts have

wide discretion to determine whether sanctions, including severe

sanctions, are appropriate.  Daval, 951 F.2d at 1365; see also
Sieck v. Russo, 869 F.2d 131, 134 (2d Cir. 1989) ("We ... prefer
to ... provide the teeth to enforce discovery orders by leaving
it to the district court to determine which sanction from among
the available range is appropriate.").  The court must make its
decision regarding sanctions "in light of the full record of the
case," not with reference to a single act or omission in
isolation.  Cine, 602 F.2d at 1068.

    Dismissal with prejudice is one of the most serious
penalties contemplated by the Rules.  For this reason, it is
viewed as "a harsh remedy to be used only in extreme situations."
Bobal v. Rensselaer Polytech. Inst., 916 F.2d 759, 764 (2d Cir.
1990).  For dismissal to be appropriate, the court must find
willfulness, bad faith, or fault on the plaintiff's part.  Id.;
Societe Internationale Pour Participations Industrielles et
Commerciales, S.A. v. Rogers, 357 U.S. 197, 212 (1958).  The
requirement of "fault" is satisfied not only by a finding of
intentional misconduct, but also by a finding of gross
negligence.  "[W]here gross professional negligence has been
found--that is, where counsel clearly should have understood his
duty to the court--the full range of sanctions may be
marshalled."  Cine, 602 F.2d at 1068 (2d Cir. 1979).[3]

_____

    [3] Even simple negligence may justify certain sanctions.
See, e.g., Residential Funding Corp. v. DeGeorge Fin. Corp., 306
F.3d 99, 113 (2d Cir. 2002) (holding that "discovery sanctions,
including an adverse inference instruction, may be imposed upon a

In keeping with these principles, district courts have imposed the sanctions of dismissal or default judgment for serious misconduct on numerous occasions, and such sanctions have often been upheld on appeal.  For example, in <u>John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.</u>, 845 F.2d 1172 (2d Cir. 1988), the district court had dismissed the defendant's counterclaims pursuant to Fed. R. Civ. P. 37(b)(2) based on the defendant's failure to answer several interrogatories, even in the face of court orders directing it to do so.  The Second Circuit affirmed, stating that the defendant's "flagrant disregard of court orders in this case justified the imposition of the sanction of dismissal."  <u>Id.</u> at 1177.

Similarly, in <u>Cine</u>, <u>supra</u>, 602 F.2d 1022, the Court of Appeals upheld dismissal of the plaintiff's claim on the ground that the plaintiff had failed to comply with a court order to file timely and adequate responses to interrogatories.  In <u>National Hockey League v. Metropolitan Hockey Club, Inc.</u>, 427 U.S. 639, 643 (1976), the district court had dismissed a claim after the plaintiff failed to comply with discovery deadlines, even after receiving numerous extensions and promising repeatedly to comply.  The Supreme Court reversed the Court of Appeals' holding that the dismissal had been an abuse of discretion.  And

_____

party that has breached a discovery obligation not only through bad faith or gross negligence, but also through ordinary negligence").  However, the Second Circuit has not extended this holding to severe sanctions such as dismissal.

in <u>U.S. Freight Co. v. Penn Central Transportation Co.</u>, 716 F.2d 954, 954-55 (2d Cir. 1983), the court upheld a default judgment against a defendant for failing to respond to a document request in discovery, where the defendant had previously engaged in dilatory conduct such as repeatedly seeking extension of the time to file an answer.

**B. <u>Application of the standards to this case</u>**

Bearing the above principles in mind, the Court now considers whether the requested sanction of dismissal is warranted by the conduct of IBM and its counsel in this case. The undisputed facts reveal two primary areas of concern with respect to counsel's conduct.

First, the Court is deeply troubled by counsel's near-complete disregard of the orders clearly set forth in its Discovery Schedule Order of February 7, 2005.  In the months following that Order, counsel for IBM failed to comply with or even make progress toward compliance with a single one of the directives in the Order.  IBM failed to serve its initial disclosures by February 18, 2005; it failed to serve its interrogatories and requests for production by July 1, 2005; it failed to submit its depositions of non-expert witnesses by June 15, 2005; it failed to submit its expert witness reports by March 15, 2005; it failed to complete its depositions of its expert witnesses by April 15, 2005; and it failed to attend the ENE

14

session on May 11, 2005.  IBM did not even file a motion to
continue the discovery schedule until May 6, 2005, after many of
the deadlines in the Order had expired.  The Court is
particularly concerned by IBM's deliberate refusal to attend the
ENE session--a session that the evaluator, Defendants' counsel,
and Defendants' representatives expended significant time,
preparation, and travel expenses to attend.

Second, and more generally, the Court is troubled by
counsel's lack of engagement in this litigation, and by the
disrespect for the Court and Defendants that this lack of
engagement implies.  IBM has failed to file an opposition to
TEA's motion to dismiss, instead filing successive motions for
extensions of time to file based on vague references to unrelated
commitments of counsel and "difficulty marshaling evidence."  It
has also failed to file oppositions to Semifab's motions for
dismissal and summary judgment.  As noted above, it has failed to
participate in the discovery process in any meaningful way.  It
has failed to respond to various efforts by the parties to
resolve discovery issues and other matters in the case.  Finally,
at the court-ordered status conference, lead counsel, Mr. Lynn,
did not even appear, thereby assigning a higher priority to a
deposition than to a federal court hearing.  For most of the
course of this litigation, IBM's participation has amounted to
what Semifab has accurately described as a "deafening silence."
See Semifab Supp. Mem. at 4.

15

By counsel's own admission, as of the date of the status conference on May 11, there had been no direct contact whatsoever between counsel and its client, IBM's insurer.  Counsel also suggested that her firm had had little or no direct contact with IBM itself.  This rather extraordinary situation has no doubt played a role in counsel's failure to engage more effectively in this litigation.  The filing of a lawsuit carries with it a responsibility to comply with the applicable rules and the orders of the Court, however, and regardless of the reasons for counsel's remarkable disengagement from the process, counsel had a duty either to comply with its obligations or to voluntarily dismiss the case.

IBM's failure to comply with the Court's various discovery orders represents a clear violation of Fed. R. Civ. P. 37(b)(2).  Its failure to appear at the May 11 ENE session was a violation of both that rule and Rule 16(f).  Based on these violations, against the backdrop of counsel's pattern of dilatory behavior and general lack of engagement in the litigation, the Court concludes that dismissal of IBM's action with prejudice is a necessary and appropriate sanction.  Counsel's pattern of noncompliance with discovery obligations and orders is comparable to the behavior that warranted dismissal in the cases discussed above, such as <u>John B. Hull</u>, <u>Cine</u>, <u>National Hockey League</u>, and <u>U.S. Freight</u>.

IBM nonetheless argues that dismissal would be an

16

inappropriately harsh sanction in the present case for two reasons.  First, it argues that it was never warned of the risk of dismissal for failure to comply with its obligations.  Second, it argues that its failure to attend the ENE session was due to a misunderstanding, not willfulness or bad faith.  Neither of these arguments is sufficiently compelling to warrant imposition of a lesser sanction.

IBM's first objection is without merit.  The Second Circuit has considered and rejected the notion that the sanction of dismissal cannot be invoked until the offending party has first been given a warning and a chance to reform its behavior.  In Daval, 951 F.2d at 1366, the court stated:

> We decline to hobble the necessary discretion of district courts to control discovery by imposing a further requirement of formal and specific warnings before imposing Rule 37(b)(2) sanctions, bearing in mind that, as we hold supra, such sanctions can only be imposed for violation of a specific, previously entered court order. Parties and counsel have no absolute entitlement to be "warned" that they disobey court orders at their peril.

Similarly, in U.S. Freight, 716 F.2d at 955, the court held that in light of the "continuing saga of dilatory conduct on the part of defendants," the district court had not abused its discretion by failing to impose a lesser sanction first.[4]

---

[4] IBM suggests that Lediju v. New York City Department of Sanitation, 173 F.R.D. 105, 112 (S.D.N.Y. 1997), stands for the proposition that dismissal must be preceded by a warning.  While the court in Lediju did observe that "[d]ismissal is appropriate where ... the party has been warned of the risk of dismissal for failure to comply with court orders," it was merely noting that the existence of a prior warning was a factor weighing in favor

17

As was the case in <u>Daval</u> and <u>U.S. Freight</u>, an explicit warning by the Court in this case was unnecessary.  Defendants' filings and communications with counsel had given IBM ample notice that it was not in compliance with its discovery obligations, yet it failed to take corrective action.  Moreover, on May 11, counsel for IBM conceded her awareness that the litigation had essentially been "ignored" and that it "really was off track."  In this context, the Court's suggestion at the hearing that it was considering the sanction of dismissal can hardly have come as a surprise.

IBM's second contention is that its failure to attend the ENE session was due to a misunderstanding, not to willfulness or bad faith.  It has submitted affidavits from attorneys Lynn and Blackman stating that neither they nor anyone in their office was "aware that the Court had ordered the ENE go forward."  <u>See</u> Affidavit of Pietro J. Lynn (Paper 36); Affidavit of Barbara R. Blackman (Paper 37).  It also argues that to the extent that the Court did order the ENE to go forward, that order was unclear.

As an initial matter, the Court notes that the defense of "misunderstanding" is raised only in connection with the ENE session, not with the numerous other violations of IBM's

_____

of dismissal.  It did not suggest that a warning was a prerequisite to the sanction of dismissal--nor would it have been appropriate to do so, since as a district court, the <u>Lediju</u> court was bound by the Second Circuit's holdings in <u>Daval</u> and <u>U.S. Freight</u>.

discovery obligations discussed above.  The argument falls short
even with respect to IBM's failure to attend the ENE session,
however.  IBM's focus on whether the Court "ordered the ENE [to]
go forward" misrepresents the issue.  The parties' obligation to
attend the ENE was established by the Court's Discovery Schedule
Order of February 7, 2005, which clearly stated that "[t]he Early
Neutral Evaluation session shall be conducted on May 11, 2005 at
10:00 am."  As with any duty established by a court order, that
obligation was to remain in effect unless and until it was
revoked by a subsequent order.  Because there was no such
revocation, there was no need for a subsequent order by the Court
that the ENE was to "go forward."

    IBM appears to suggest that the parties' motions to continue
the ENE, which were filed shortly before its scheduled
occurrence, somehow cast doubt on whether the Court's order was
still in effect.  Because the Court did not rule on those
motions, however, there could be no doubt that the parties'
obligations remained in effect.  Furthermore, there is evidence
suggesting that counsel for IBM was aware of its obligation to
attend the ENE.  IBM acknowledged in its May 6, 2005 motion that
"[t]he ENE is scheduled for May 11, 2005."  Ms. Blackman's
facsimile of May 10 indicates her understanding that both
defendants were planning to attend.  Significantly, the facsimile
did not contain any suggestion that IBM understood the Court to
have ordered the ENE not to go forward; instead, it merely stated

that IBM was "not prepared to go forward with tomorrow's ENE,"
that it viewed the session as a "waste of time," and that it
would "not be there."

In addition, all three parties were notified by Ms. Evelti,
Judge Sessions' judicial assistant, that a status conference was
scheduled for the afternoon of May 11.  Counsel for both
defendants have submitted affidavits stating that Ms. Evelti
informed them that the conference had been scheduled on that date
because the parties would already have gathered for the ENE
session that would be occurring that morning.  Notwithstanding
the affidavits of Ms. Blackman and Mr. Lynn, the Court considers
it unlikely that Ms. Evelti would not have relayed the same
information to someone at the office of IBM's counsel, given the
Court's general practice of communicating equally with all
parties.

For the above reasons, the Court is satisfied that counsel
for IBM acted with sufficient fault to justify the sanction of
dismissal.  It is unnecessary for the Court to decide whether
counsel acted willfully, even though there is evidence tending to
support such a conclusion.  As discussed above, dismissal is
justified not only by willfulness, but also by gross professional
negligence.  See Cine, supra.  Even if counsel for IBM genuinely
suffered from a "misunderstanding" about whether the ENE was to
go forward, their failure to clarify the situation before
unilaterally deciding not to attend fell well below the level of

conduct required of a competent attorney.  Accordingly, counsel's conduct constituted gross negligence, particularly in conjunction with their disregard of IBM's other discovery obligations.

## C. **Attorneys' fees**

In addition to dismissal, TEA seeks reimbursement of the attorneys' fees and expenses it has incurred in defending itself against IBM's complaint.  Semifab has not made such a request; however, as discussed below, the Court will order a limited award of attorneys' fees to Semifab as well as TEA.

When a party or its attorney has failed to comply with a discovery order in violation of Fed. R. Civ. P. 37(b)(2), the court must order the offender to reimburse the other parties for expenses incurred as a result of the failure:

> In lieu of any of the foregoing orders or in addition
> thereto, the court shall require the party failing to obey
> the order or the attorney advising that party or both to
> pay the reasonable expenses, including attorney's fees,
> caused by the failure, unless the court finds that the
> failure was substantially justified or that other
> circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2).  Rule 16(f) contains substantially identical language.

Having already established that counsel for IBM failed to comply with their obligations under Fed. RR. Civ. P. 37(b)(2) and 16(f), the Court must determine which of Defendants' expenses were caused by those failures.  Several of the motions filed in this case would not have been necessary had counsel complied with

21

their obligations.  In particular, Semifab's motion to compel discovery, Defendants' joint motion to stay the discovery schedule and ENE, and both defendants' motions for sanctions were filed as a direct result of IBM's violations of the Rules. Furthermore, IBM's failure to attend the ENE session caused both defendants to incur preparation and travel expenses unnecessarily.

Pursuant to Rules 16(f) and 37(b)(2), the Court must order IBM's counsel to reimburse the expenses incurred by Defendants in connection with the matters outlined in the preceding paragraph, unless the failures were substantially justified or other circumstances make such an award unjust.  Given that the Court has already determined that counsel's conduct was grossly negligent and that it warrants the severe sanction of dismissal, the Court cannot conclude that the failures were substantially justified.

Nor is the Court aware of any other circumstances that would make an award of attorneys' fees and other expenses unjust.  The Court notes that IBM (as well, presumably, as its insurer) is a large and sophisticated corporation, and it has retained experienced counsel to represent it.  Counsel's dilatory and nonresponsive behavior has caused Defendants to incur substantial unnecessary expenses.  Far from being unjust to require reimbursement of these expenses, it would be unjust not to do so.

In its motion for sanctions, TEA seeks reimbursement of all

of the expenses it has incurred in defending itself against IBM's complaint.  Given that the Court has already ordered the severe sanction of dismissal, it will not order reimbursement of expenses that are not directly traceable to IBM's violations of its discovery obligations.  It will, however, order counsel for IBM to reimburse TEA and Semifab for all attorneys' fees and other expenses that were a direct result of those violations.

D. **Defendants' motions to dismiss and for summary judgment**

In addition to Defendants' motions for sanctions, several dispositive motions are still pending.  IBM is well past the deadlines to file oppositions to TEA and Semifab's motions to dismiss pursuant to Rule 12(b)(6) and to Semifab's motion for summary judgment.  Under Local Rule 7.1(a)(6), if no opposition is filed, a motion is deemed unopposed and is granted without oral argument.  Given IBM's conduct in the litigation thus far, the Court is of the view that permitting further time to file oppositions at this stage of the case would be inappropriate.

For these reasons, the Court will deny IBM's motions for extension of time to file an opposition to TEA's motion to dismiss, and it will grant TEA and Semifab's motions to dismiss pursuant to Rule 12(b)(6) and Semifab's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, TEA and Semifab's motions for the sanction of dismissal are GRANTED.  IBM's motions for extensions of time to file an opposition to TEA's motion to dismiss are DENIED.  TEA and Semifab's motions to dismiss are GRANTED. Semifab's motion for summary judgment is GRANTED.  Additionally, counsel for IBM are ORDERED to reimburse Defendants TEA and Semifab for all expenses, including attorneys' fees, that they incurred in connection with Semifab's motion to compel discovery, Defendants' joint motion to stay the discovery schedule and ENE, both defendants' motions for sanctions, and the ENE session on May 11, 2005.

Dated at Burlington, Vermont this 5th day of October, 2005.


/s/ William K. Sessions III
William K. Sessions III
Chief Judge

24